Martin, J.
The only question presented is, was the petition good in law. The facts stated are admitted by the demurrer.
The company had fully performed its engagement by constructing the road through' Defiance. The defendants had partially performed their stipulations. And, as no complaint is made except of the failure to convey the legal title to the part of the land in controversy, we may assume that their performance in every other respect was complete. This land was selected by the committee, and fully paid for with funds furnished by the defendants and outside parties. It was selected in pursuance of the contract, and the company accepted it accordingly, and entered upon possession. In this situation the company was manifestly the full equitable owner in possession, and entitled to all the rights pertaining to that relation. Holgate held the legal title only, and held it in trust for the company. The defendants would have been liable for any default of his whereby the company, without fault or consent on its part, should fail to receive *586 the property. The mortgage given to Cheney created no lien as against the company in possession, and conveyed nothing but the bare legal title. But in the foreclosure suit the company was a party and made no objection to the judgment subjecting the premises, and is concluded thereby. Its default was equivalent to an express assent, validly given, to the incumbrance. 'The property thus subjected sustained to the mortgage debt a relation in the nature of a surety-ship ; and it follows that when it was sold, and the proceeds applied to the payment of the judgment, the company became entitled to reimbursement from the principal debtor, Holgate. Hence, a good cause of action is stated against him, and it was error to sustain the demurrer as to him. His co-committeemen incurred no liability by their assent to the mortgage, for their assent was ineffective, and so was the mortgage, until affirmed by the significant default-.of the company. To hold the other defendants liable would be to make them, without their consent or fault, the company’s principals in an engagement which it alone assumed. It is sought to reach the land on an averment that Cheney holds it in trust for Holgate by some secret understanding entered into since the 'judgment in foreclosure was taken. The necessary implication, is that by the sale he took the title free from trust. It is not perceived on what principle this averment is of any value, at least in the present posture of the case. The title passed free from any right or claim of the compañy, or of any of the proponents, and an equity in favor of Holgate, subsequently acquired, stands on the same footing in respect to this case as does any other item of his property. It is claimed in addition that the default of the company goes further and estops it from asserting that it was at the time of the judgment and sale the real owner. All parties were charged with notice of the company’s possession and ownership. It was a party to the suit, and its interest in the premises was subjected. The condition of the title and ownership as between it and Holgate was unimportant and not in any way in issue. Holgate personally and the company’s land became both bound for the debt, and its reduc *587 tion to judgment did not preclude inquiry as to whether either was surety for the other. To estop the real owner under such circumstances, to assert as a co-defendant the fact of his ownership, it must appear that the point was at issue, material, and necessarily determined in the action.
What has been said renders irrelevant to the decision of the demurrer a consideration of other questions that have been discussed before us. But as the case goes down for further proceedings, it is proper to notice them briefly as affected by the facts stated in the petition.
There having been full performance on both sides, except to pass the legal title to the company in possession, we think that objections grounded on the statute of frauds are not sustainable. We also think that the acts of alleged performance on both sides are referable to the contract, and to it alone. They were done in compliance with, and are strictly responsive to, the térms of the contract. The company was not required by its charter to run its line through Defiance, nor can it be said that it must or would have done so irrespective of its engagement with the defendants. A route slightly or materially variant might have been equally politic. The proponents contracted for the advantages of the location, and received the full benefit. The company, as it avers, relied on the contract, and we must hold that a default would be a fraud on it.
It is also objected that the agreement is without consideration and against public policy. Stress is laid on the fact that in the agreement the word donations is used in designating the lands and moneys to be provided for the company. The case is one of mutual promises. By acceptance of the proposition the company agreed to make Defiance a point on its line, and in consideration thereof the proponents agreed to secure the right of way as named, and procure for the company depot grounds and certain lands without further cost to it. That public policy forbids the enforcement of contracts to induce the location of railroad lines at particular places in disregard of the rights of stockholders and the public is very true. Contracts for location, *588 providing private emolument for the officials who sanction them, are of course void. And even if the stipulated location turn out to be the best that could have been made, and entail no detriment to stockholders or the public, yet such contracts are held in well-considered cases, and, we think, correctly, to be against public policy as a dangerous exercise of official power for private gain.
In the case at bar these objectionable features are not present. The stipulated compensation was for the company alone. And it may well be that it was'a matter of indifference to the stockholders and public whether the route was through Defiance or not. The propriety of the location in respect to particular points when the charter is silent is of necessity left to the managing officers of the company, and we fail to see any illegality or immorality in their stipulating for the benefit of the company in awarding the advantages of location as between contesting localities. The general doctrine that such an agreement is not void per se as against public policy is laid down in the leading case of Cumberland Valley R. R. Co. v. Baab, 9 Watts, 458, and has been frequently recognized in analogous cases in our supreme court, notably in the decisions sustaining contracts to take stock conditioned on a particular location.

Judgment reversed.